```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
NOEL TORRES,

                    Plaintiff,              10-CV-6581

          v.                                 DECISION
                                             and ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security

                    Defendant.
_____
```

## Introduction

Plaintiff, Noel Torres ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Specifically, Plaintiff argues that the decision of the Commissioner contains errors of law and he requests that this Court reverse the decision or, in the alternative, remand the case to the Social Security Administration for further proceedings.

Commissioner moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, to affirm the final decision of the Administrative Law Judge ("ALJ") denying Plaintiff DIB and SSI. Plaintiff opposes Defendant's motion and cross-moves for judgment on the pleadings. For the reasons set forth herein, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion is denied. Plaintiff's Complaint is dismissed with prejudice.

**Background**

Plaintiff filed applications for DIB and SSI on April 14, 2008 which were denied. (Tr. 68-73).[1] Plaintiff, with his attorney, Gregory Fassler, Esq., attended an administrative hearing Before Administrative Law Judge, John P. Costello ("ALJ"), on December 14, 2009. (Tr. 24-64). In a decision dated January 7, 2010, ALJ Costello concluded that Plaintiff was not disabled under the Act. (Tr. 10-18). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 12, 2010. (Tr. 1-4). This action followed.

**Discussion**

**I. Jurisdiction and Scope of Review**

Title 42, Section 405(g) of the United States Code grants this Court the power to review the decision of the Commissioner and, if appropriate, remand the matter for further proceedings. See Mathews v. Eldridge, 424 U.S. 319, 320, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Section 405(g) additionally directs this Court to accept the Commissioner's findings of fact so long as they are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., 2007 U.S.App. LEXIS 9396 at *3 (2d Cir. 2007). "Substantial

---

[1] "Tr." refers to the transcript of the administrative record.

evidence" is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F.Supp. 265, 267 (S.D.Tex. 1983) (citation omitted). Section 405(g) thus limits the Court's review to two inquiries: (1) whether the Commissioner's decision was supported by substantial evidence in the record and, (2) whether the Commissioner's decision was based upon an erroneous legal standard. See Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). Under section 405(g), this Court's review of the Commissioner's decision is not *de novo*, and is limited to an inquiry as to whether the Commissioner's decision was supported by substantial evidence. See Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990).

Both Plaintiff and Commissioner move for judgment on the pleadings pursuant to 42 U.S.C. § 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) states that, "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Under Rule 12(c), "[j]udgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible

3

merely by considering the contents of the pleadings." See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988) (citing National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 358 (7th Cir. 1987)). Remand to the Commissioner for further development of the evidence is warranted when the record contains gaps which render the final decision of the Commissioner inappropriate. See Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2005).

II. **The ALJ's decision to deny Plaintiff benefits was supported by substantial evidence in the record**

A. **The ALJ's determination**

In his decision, the ALJ adhered to the Social Security Administration's five-step analysis which require the ALJ to review the claim as follows:

> (1) The ALJ considers Plaintiff's work activity during the relevant period. If Plaintiff was engaged in substantial gainful work during the relevant period, Plaintiff is not disabled.
>
> (2) If Plaintiff is not currently engaged in substantial gainful work, the ALJ considers whether Plaintiff has a severe medically-determinable physical or mental impairment that may result in death or is expected to last or has lasted for a period of 12 months or more ("the duration requirement"), or whether Plaintiff has a combination of impairments which meet this standard.
>
> (3) The ALJ then examines whether the severity of the medical impairment meets or equals one of the listings in Appendix 1 of Subpart P and whether it meets the duration requirement. If so, the ALJ will find that Plaintiff is disabled.
>
> (4) If not, the ALJ will consider Plaintiff's residual functional capacity and past relevant work. If Plaintiff

>can still do his or her past relevant work, Plaintiff is not disabled.
>
>(5) If not, the ALJ will consider Plaintiff's residual functional capacity, age, education, and work experience to see if Plaintiff can make an adjustment to other work in the National economy. If the ALJ finds that Plaintiff can make such an adjustment, the ALJ will conclude that Plaintiff is not disabled. If the ALJ finds that Plaintiff cannot make such an adjustment, the ALJ will conclude that Plaintiff is disabled.
>
>20 C.F.R. § 404.1520(a)(4)(i)-(v) and 419.920(a)(4)(i)-(v) (2009).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful work activity since the alleged disability onset date of March 10, 2008. (Tr. 12). At step two, the ALJ found that Plaintiff had the following severe impairments: back, left thigh, knee, and right ankle pain. (Tr. 12). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with some limitations. The ALJ found that Plaintiff was unable to perform any of his past relevant work because of this RFC. At step five, the ALJ found that Plaintiff was considered a young individual under 20 C.F.R. § 404.1563, possessed a limited education, and could communicate in English. (Tr. 16; 20 C.F.R. § 404.1564). In consideration of Plaintiff's age, education, work experience and residual functional capacity, the ALJ determined

that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 17; 20 C.F.R. §§ 404.1569, 404.1569(a)). Accordingly, the ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 19).

B. **Plaintiff's medical history**

On September 21, 1995, Plaintiff was admitted to the University of Rochester, Strong Memorial Hospital following a motor vehicle accident in which he sustained several bone fractures including an L4 burst fracture, left open femur fracture, closed right talar neck fracture, and closed left diatal radius facture. Id. Plaintiff underwent surgery after the accident. (Tr. 250).

Plaintiff completed a function report on May 24, 2008, in which he stated that he goes to church, spends time with his sons, and helps his mother around the house. He also stated that he attempts to keep himself in a comfortable position, but he is very uncomfortable when sleeping because he feels stiff along with experiencing pain on his spine. He has no problem with personal care, cooks only small meals occasionally, does not usually shop but when he does, it is not for long, and has daily hobbies of reading and watching television. He has pain on his tailbone, femur bone, right ankle, left leg and back when walking, can walk for 2 blocks without stopping, has trouble staying focused, and forgets things quickly. (Tr. 156-163). In August, 2008, Plaintiff

6

completed a disability report where he stated he could lift 25 pounds, sit for an hour or more, stand for 30 minutes and walk for a few blocks. (Tr. 181).

Plaintiff saw Dr. Harbinder Toor, M.D. for an Internal Medicine Examination on May 29, 2008. Dr. Toor noted that Plaintiff was not in acute distress, had no difficulty walking on heels and toes, could get on and off of the examination table with no help and could rise from a chair with no difficulty. (Tr. 251). Plaintiff's hand and finger dexterity were not intact in the left hand with grip strength at 4 out of 5 and hand and finger dexterity were intact in the right hand with grip strength at 5 out of 5. Id. Dr. Toor stated that Plaintiff had mild to moderate limitations in standing, walking, bending, squatting or sitting for a long time and mild limitations in grasping, lifting, pushing and pulling with the left hand. Dr. Toor also noted that Plaintiff's headaches may interfere with his routine. (Tr. 253). Dr. Toor's report listed Plaintiff's activities of daily living as, "Cooking varies. Cleaning varies. Laundry and shopping varies. Childcare varies. He showers daily. No baths. He dresses every day. He watches TV and listens to the radio. He likes reading. He goes out to church. No sports. He socializes with friends. No hobby." (Tr. 251).

On August 22, Plaintiff was examined by Orthopedic specialist Dr. Clifford Everett, M.D. who diagnosed chronic low back pain due to fractures from the auto accident. (Tr. 264). Dr. Everett

further stated that there was no treatment available to provide a significant change to Plaintiff's symptoms. Dr. Everett also stated that Plaintiff could lift no more than 10 pounds, could not sustain any prolonged positions and would require the ability to sit and stand as needed. (Tr. 265).

On September 4, 2008, Disability Examiner, K. Henningsen, examined Plaintiff and opined that Plaintiff could occasionally lift or carry 50 pounds, could frequently carry 25 pounds, could stand and walk for about 6 hours in an 8 hour workday and could push or pull hand or foot controls with no limitations. (Tr. 267). Henningsen also recorded that Plaintiff did not have postural, manipulative, visual, communicative or environmental limitations. (Tr. 268-69).

Plaintiff first saw treating physician Dr. Andrew Wolff, M.D. on August 6, 2008. He complained of pain in the spine and lower tailbone area which usually occurred after walking for a long time or lifting something the "wrong way." (Tr. 256). On September 29, 2008, Dr. Wolff noted that Plaintiff had chronic back pain with no surgical intervention possible and left leg pain. (Tr. 357). On November 13, 2008, Dr. Wolff referred Plaintiff to Dr. Catherine Humphrey, M.D. (Tr. 355). On December 12, 2008, Dr. Humphrey removed hardware from Plaintiff's left leg. (Tr. 279). Dr. Humphrey conducted a follow-up examination of Plaintiff On February 12, 2009, and reported that Plaintiff's knee pain was essentially gone. Dr. Humphrey noted that Plaintiff's incisions

were nicely healed and that he could return to all of his pre-injury activities. (Tr. 299, 349). On January 28, 2009, Dr. Wolff noted that tramadol helped Plaintiff with pain. (Tr. 350). On February 27, 2009, Dr. Wolff stated that Plaintiff had no spine pain at rest, but noted during several examinations that Plaintiff had lower back pain when performing an activity such as sitting or standing for a long period of time. (Tr. 337, 339, 347).

During the February 27, 2009 examination, Dr. Wolff wrote, "I will complete [my] disability paperwork given Dr. Everett's opinion." (Tr. 348). Dr. Wolff conducted follow-up examinations on several occasions between February 27, 2009 and November 25, 2009, at which time he noted that Plaintiff's back pain was unchanged and that he continued to take ibuprofen when his pain was mild and tramadol when his pain was severe. (Tr. 337).

On March 4, 2009, Dr. Wolff, completed a residual functional capacity evaluation for Plaintiff. In his evaluation, Dr. Wolff opined the following. Plaintiff could walk 1-2 city blocks without pain, could stand for 30-45 minutes at one time, and for less than 2 hours total during an 8-hour workday. (Tr. 293) Plaintiff could sit for 30-45 minutes at one time, for about 4 hours total during an 8-hour workday and would need to walk around every 30-45 minutes for an unknown period of time during an 8-hour workday. Plaintiff could perform a job that permits shifting at will from sitting, standing or walking. Plaintiff did not need an assistive ambulatory device. Id. Plaintiff could rarely lift less than

10 pounds and could never lift 10 pounds or more. (Tr. 294). Plaintiff could never twist, scoop, crouch, squat or climb ladders or stairs. Plaintiff does not have significant limitations with reaching, handling, or fingering. Plaintiff would have good and bad days. Plaintiff would be absent from work more than four days per month and was not capable of sustaining full-time work. Id.

   Plaintiff saw treating physician, Dr. Clifford Ameduri, M.D. on April 2, 2009. (Tr. 298-308). In his initial physical examinations, Dr. Ameduri noted that he had few findings, but requested authorization for an MRI and an EMG of the lumbosacral spine because he noted that Plaintiff had a history of radicular signs. (Tr. 303). Dr. Ameduri examined Plaintiff again in August and he noted that Plaintiff's pain occurred when he walked up stairs or for any distance but he felt better when he laid down. (Tr. 313). On November 7, 2009, Dr. Ameduri completed a residual functional capacity questionnaire where he made the following assessment: Plaintiff could sit for one hour at a time and one hour total during an 8-hour workday. (Tr. 333). Plaintiff could stand and walk for half an hour at a time and one hour total during an 8-hour workday. Plaintiff could frequently lift or carry up to 5 pounds, occasionally lift or carry 6-10 pounds, and could never lift or carry more than 10 pounds. Plaintiff could use his right hand for simple grasping, pushing and pulling of arm controls and fine manipulation but could not use his left hand for any of those actions. Plaintiff could not use either of his feet for the

pushing or pulling leg controls. Plaintiff could not bend, squat, crawl or climb but could occasionally reach. Id. Plaintiff took medications that would frequently significantly impair or preclude performance of even simple work tasks. (Tr. 334). Plaintiff needed to lie down for over 6 hours during an 8-hour workday to relieve pain. Plaintiff had impairments that would force him to miss work 4 or more days per month and preclude him from working in a competitive full-time work environment. Id.

C. **The ALJ fully developed the administrative record.**

Plaintiff argues that the ALJ failed to fully develop the administrative record because he did not recontact the treating physicians. See Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1996); see also 20 C.F.R. § 404.1512(e). Plaintiff notes that Social Security Ruling ("SSR") 96-5p requires that the ALJ make every reasonable attempt to recontact physicians when the basis of his or her opinion is not clear to the ALJ. Further, Plaintiff points to the Code of Federal Regulations, Section 404.1512(e), which requires an ALJ to recontact treating physicians when medical evidence in the record is insufficient to determine whether Plaintiff is disabled. In support of his argument, Plaintiff contends that the ALJ erred as a matter of law by not recontacting Plaintiff's treating sources, Drs. Wolff and Ameduri.

In his decision, the ALJ stated that Dr. Wolff's assessment that Plaintiff is disabled is inconsistent with the record as a whole and with Wolff's own examination findings. (Tr. 15). The ALJ

11

determined that Dr. Wolff's disability assessment was based on findings other than his own because he stated that he would complete the disability paperwork based on Dr. Everett's finding, and therefore gave Dr. Wolff's assessment little weight. The ALJ stated that Dr. Ameduri's conclusion that the Plaintiff cannot work was not supported by his own examination findings. The ALJ therefore gave Dr. Ameduri's opinion of disability little weight. "[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." See Rosa v. Callahan, 168 F.3d 72, 80 at note 5 (2d Cir. 1999)(citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).

The ALJ found that, based on the record, the medical opinions of the treating physicians were not supported by objective medical evidence and were inconsistent with other evidence in the record. Accordingly, this Court finds that the ALJ adequately developed the administrative record as Plaintiff has not pointed to any obvious gap in the record and the record contains a complete medical history.

D. **The ALJ properly assessed the opinions of treating physicians, Dr. Wolff and Dr. Ameduri.**

Plaintiff contends that the opinions of Drs. Wolff and Ameduri were supported by the record and were not inconsistent with other evidence in the record. See 20 C.F.R. 1527(d)(2).

The opinion of a treating physician is given controlling weight as long as it is supported by substantial evidence in the record and is not inconsistent with other evidence. See 20 C.F.R. § 404.1527(d)(2). However, the ALJ is not required to give controlling weight to the physician's opinion if it is inconsistent with medical evidence and clinical findings in the record. See Wavercak v. Astrue, 2011 U.S. App. LEXIS 8459, at *5 (2d Cir. N.Y. Apr. 25, 2011).

The ALJ concluded that the opinions of treating physicians Dr. Wolff and Dr. Ameduri should be given little weight. The ALJ determined that their opinions were inconsistent with the record and their own medical findings. (Tr. 15-16).

The ALJ noted that Dr. Wolff stated that Plaintiff had no spine pain at rest but that he had pain upon prolonged sitting, standing or walking. (Tr. 339, 350). On January 28, 2009, Plaintiff reported that his pain was calm, was worse in cold weather, mostly in the leg and only sometimes in the spine. (Tr. 350). On February 27, 2009, Dr. Wolff wrote that Plaintiff's spine, strength, gait and stance were all normal. (Tr. 347-48). Dr. Wolff wrote that he would complete the disability paperwork "given Dr. Everett's opinion." (Tr. 348). Accordingly, the ALJ found that Dr. Wolff's opinion that Plaintiff is disabled was inconsistent with his own findings and was based on his interpretation of Dr. Everett's findings. Consequently, the ALJ gave Dr. Wolff's opinion little weight. (Tr. 15).

The ALJ noted that upon physical examination of Plaintiff, Dr. Ameduri did not make a great deal of findings. The ALJ also emphasized that Dr. Ameduri's electrodiagnostic examination revealed only evidence of right S1 nerve root irritation to a mild degree without motor unit drop off. (Tr. 299-308). Dr. Ameduri's findings also noted Dr. Humphrey's release of Plaintiff to pre-injury status. Dr. Ameduri noted that Plaintiff was using a TENS unit, taking Gabapentin, ibuprofen and tramadol, all of which were successful in relieving pain. The ALJ concluded that Dr. Ameduri's finding of disability due to lumbosacral sprain and strain was entitled to little weight because it was unsupported by his own findings and inconsistent with Dr. Wolff's findings. (Tr. 16).

Dr. Wolff concluded that Plaintiff could walk 1-2 blocks without pain, could sit for 30-45 minutes at a time, could stand for 30-45 minutes at a time and could never lift more than 10 pounds. (Tr. 293). These findings are inconsistent with substantial medical evidence in the record. In August, 2008, Plaintiff completed a disability report where he stated he could lift 25 pounds and sit for an hour or more at a time. (Tr. 181). On May 29, 2008, Dr. Toor opined that Plaintiff only had mild to moderate limitations with standing, walking and sitting for a long time. (Tr. 251). On September 4, 2008, disability examiner Henningsen found that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds and could stand and walk for 6 hours in an 8-hour workday. (Tr. 267). There is substantial evidence in the

record that contradicts Dr. Wolff's RFC determination. Therefore, this Court finds that the ALJ properly afforded little weight to Dr. Wolff's disability determination.

E. **The ALJ's residual functional capacity finding was well supported by the record.**

Plaintiff argues that the ALJ improperly substituted his own opinion for that of medical experts in making his RFC determination. Plaintiff notes that the ALJ's RFC determination is inconsistent with Dr. Wolff's RFC determination, and Plaintiff contends that Dr. Wolff's RFC is based on substantial objective medical findings.

The ALJ concluded that Plaintiff had the RFC to complete sedentary work as defined in 20 C.F.R. 404.1567(a) with the following limitations. (Tr. 13). Plaintiff can only occasionally stoop, crouch, kneel and crawl, and cannot climb ladders or scaffolds. Plaintiff must change position every hour. Plaintiff is limited to work requiring only the attention and concentration to understand, remember and follow instructions required of unskilled work due to the effects of his medication. Id.

F. **The ALJ properly assessed Plaintiff's subjective complaints.**

Plaintiff argues that the ALJ failed to properly assess his subjective complaints. Plaintiff contends that his complaints were entitled to great weight, and the ALJ's failure to afford them such weight was error.

The ALJ notes that Plaintiff's subjective complaints of an incapacitating disability contrasts with several instances in the record where Plaintiff acknowledges activity which is inconsistent with such an impairment. The ALJ also notes that Plaintiff's subjective complaints as to the intensity, persistence, and limiting effects of the symptoms are inconsistent with his (the ALJ's) RFC assessment. (Tr. 14).

In Plaintiff's August, 2008 disability report, he admitted that he could sit for an hour or more and lift up to 25 pounds. (Tr. 181). In his examination by Dr. Toor, Plaintiff recited daily activities which included shopping, cleaning, doing laundry, taking care of his children and helping his mother around the house. (Tr. 251). Plaintiff also stated in a function report that he went to the park with his children and to church on a regular basis. (Tr. 160). In the same function report, Plaintiff wrote that he could walk for two blocks before resting, at which time he would only have to rest for a "few min[ute]s". (Tr. 161). Yet Plaintiff testified that he could walk no more than one block, sit for no more than one hour at a time, stand for no more than one hour total during an 8-hour workday and spends most days lying down for the entire day. (Tr. 38, 40, 46-47).

Plaintiff's testimony, disability reports and daily activities do not coincide. The ALJ properly found that Plaintiff's subjective complaints are not entirely credible, given all of the

evidence in the record which contradicts his subjective complaints. See 20 C.F.R. 404.1529(c).

## Conclusion

For the reasons set forth above, this Court finds that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence.  Accordingly, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied.  Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED: September 13, 2011
       Rochester, New York